MOORE, J., delivered the opinion of the court, in which WHITE, J., joined. GRIFFIN, J. (pp. 560-68), delivered a separate dissenting opinion.
OPINION
KAREN NELSON MOORE, Circuit Judge.
Defendant-Appellant Andres RedeMendez appeals his sentence of thirty-six months of imprisonment for reentering the United States after having been removed following a conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a) and (b)(2). Rede-Mendez challenges the district court’s use of a sixteen-level enhancement pursuant to United States Sentencing Guidelines (“U.S.S.G.”) Manual § 2L1.2, contending that his prior conviction for aggravated assault (deadly weapon) under New Mexico law did not constitute a crime of violence meriting the enhancement. Because aggravated assault under New Mexico law is not categorically a crime of violence and the available Shepard documents do not reveal what version of the offense Rede-Mendez committed, we VACATE the judgment of the district court and REMAND for re-sentencing consistent with this opinion.
I. BACKGROUND
On April 14, 2010, Andres Rede-Mendez was arrested in Berrien County, Michigan for operating under the influence and driving without a license. In a subsequent interview with Immigration and Customs Enforcement agents, Rede-Mendez admitted that he had reentered the United States without permission in 2007 after having been removed to Mexico in 2003. The 2003 removal followed a conviction in New Mexico state court for aggravated assault (deadly weapon) in violation of New Mexico Statute § 30-3-2(A). RedeMendez was indicted on one count of reentering the United States after having been removed following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).[1] He pleaded guilty on August 17, 2010.
The Presentence Investigation Report (“PSR”) utilized U.S.S.G. § 2L1.2, which *555 sets a base offense level of eight for the crime of Unlawfully Entering or Remaining in the United States and provides for a sixteen-level enhancement if the defendant “previously was deported ... after a conviction for a felony that is ... a crime of violence,” U.S.S.G. § 2L1.2(b)(l)(A)(ii). Concluding that Rede-Mendez’s aggravated-assault conviction constituted a crime of violence, the PSR applied the sixteen-level increase. The PSR subtracted three levels for Rede-Mendez’s acceptance of responsibility. With a criminal history category of IV and an offense level of twenty-one, the recommended guidelines range was 57-71 months of imprisonment.
Rede-Mendez objected to the report, arguing that the aggravated-assault conviction was not a crime of violence. The district court overruled Rede-Mendez’s objections and applied the enhancement, concluding that the New Mexico statute’s inclusion of the use of a deadly weapon as an aggravating factor meant that the crime fell within the generic definition of aggravated assault and had the use or threatened use of physical force as an element. The court also departed downward one criminal history level, however, which reduced the guidelines range to 46-57 months of imprisonment. Reasoning that Rede-Mendez’s offense was a relatively minor crime of violence compared to other crimes that also bear that designation and that, as a deportable alien, he would not be able to take advantage of certain rehabilitative programs while confined, the district court imposed a below-guidelines sentence of 36 months of imprisonment.
Rede-Mendez filed a timely notice of appeal, alleging that his sentence was procedurally unreasonable due to the sixteen-level enhancement for a prior felony crime of violence.
II. ANALYSIS
A. Crime of Violence
This case again requires us to determine whether a particular criminal offense triggers an enhanced sentence by qualifying as a crime of violence, by now a common but no less difficult task. We review de novo a district court’s conclusion that a crime constitutes a crime of violence for sentencing purposes. United States v. Soto-Sanchez, 623 F.3d 317, 319 (6th Cir.2010).
The Application Notes to U.S.S.G. § 2L1.2 define “crime of violence” as certain enumerated offenses — including “aggravated assault” — and “any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.” U.S.S.G. § 2L1.2, cmt. n.l(B)(iii).[2] Although we are bound *556 by a state court’s interpretation of state criminal law, including the elements of a crime, the ultimate issue of whether a crime is a crime of violence is a question of federal law. United States v. Rodriguez, 664 F.3d 1032, 1037 (6th Cir.2011) (citing Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1269, 176 L.Ed.2d 1 (2010)).
In determining the nature of a prior conviction, we apply a “categorical” approach, looking to the statutory definition of the offense and not the particular facts underlying the conviction. Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 2272, 180 L.Ed.2d 60 (2011) (quoting James v. United States, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007)); Soto-Sanchez, 623 F.3d at 320-21. Nor does a specific offense automatically qualify as a crime of violence just because it has the same name as one of the enumerated offenses. Taylor v. United States, 495 U.S. 575, 588-89, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Rather, the offense for which the defendant was convicted must fall within the generic definition of that crime, which is found by surveying how the crime is described across jurisdictions, as well as consulting sources such as the Model Penal Code. Id. at 598 & n. 8, 110 S.Ct. 2143; United States v. McFalls, 592 F.3d 707, 716-17 (6th Cir.2010).
If a state criminal statute could be violated in a way that would constitute a crime of violence and in a way that would not, we look beyond the statutory language and examine certain state-court documents (the “Shepard documents”) to determine whether the conviction necessarily depended on the commission of a crime of violence. United States v. McMurray, 653 F.3d 367, 372 (6th Cir.2011) (quoting United States v. Gibbs, 626 F.3d 344, 352 (6th Cir.2010)); see also Shepard v. United States, 544 U.S. 13, 16-17, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). When the prior conviction resulted from a guilty plea, we look to documents that identify what facts the defendant “ ‘necessarily admitted’ ” by pleading guilty. United States v. Medina-Almaguer, 559 F.3d 420, 423 (6th Cir.2009) (quoting Shepard, 544 U.S. at 16, 125 S.Ct. 1254). Such documents can include the “charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented,” Shepard, 544 U.S. at 16, 125 S.Ct. 1254; we do not, by contrast, consider police reports or complaint applications, id. This approach ensures that sentencing hearings do not become collateral trials. Id. at 23, 125 S.Ct. 1254.
B. New Mexico Aggravated Assault— Categorical Analysis
1. Enumerated-Offense Prong
In New Mexico, aggravated assault (deadly weapon) is defined as “unlawfully assaulting or striking at another with a deadly weapon.” N.M. Stat. § 30-3-2(A). Assault is in turn defined as “(A) an attempt to commit a battery upon the person of another; (B) any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or (C) the use of insulting language toward *557 another impugning his honor, delicacy or reputation.” Id. § 30-3-1.
Under the Model Penal Code, a defendant commits aggravated assault if he or she
(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life, or
(b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon[.]
Model Penal Code § 211.1(2). We have recognized the Model Penal Code definition of aggravated assault as the generic definition for the purpose of deciding whether a crime with that label is a crime of violence, at least in states which have merged the crimes of assault and battery. McFalls, 592 F.3d at 717. Professor La-Fave likewise explains that, in jurisdictions like New Mexico that retain a distinct crime of assault in which the fear of injury is sufficient for conviction, “there must be an actual intention to cause apprehension.” 2 Wayne R. LaFave, Substantive Criminal Law § 16.3(b) (2d ed. 2003).
As the government acknowledges, New Mexico’s definition of aggravated assault “is broader than the Model Penal Code based definition.” United States Rule 28(j) Letter of Sept. 20, 2011. The New Mexico version of aggravated assault differs from the generic version most significantly in the mens rea it attaches to the element of bodily injury or fear of injury. Unlike the Model Penal Code or LaFave definitions, the New Mexico statute does not require specific intent to injure or to frighten the victim. See, e.g., State v. Manus, 93 N.M. 95, 597 P.2d 280, 284 (1979), overruled on other grounds, Sells v. State, 98 N.M. 786, 653 P.2d 162 (1982); State v. Morales, 132 N.M. 146, 45 P.3d 406, 414-15 (2002). Instead, aggravated assault in New Mexico requires general criminal intent, which consists of “conscious wrongdoing or the purposeful doing of an act that the law declares to be a crime.” State v. Campos, 122 N.M. 148, 921 P.2d 1266, 1277 n. 5 (1996).[3]
New Mexico’s definition of aggravated assault is also broader than the generic version because the underlying assault can be committed solely by using insulting language. Neither the Model Penal Code nor LaFave recognize insult to honor or reputation as the basis for an assault conviction.[4] Because the New Mexico definition *558 of aggravated assault is broader than the Model Penal Code definition, which we have recognized as the generic definition of that crime, we conclude that RedeMendez’s conviction was not categorically a crime of violence under the enumerated-offense prong of U.S.S.G. § 2L1.2.
2. “Element” Prong
The broad definition of assault likewise obstructs any argument that New Mexico aggravated assault (deadly weapon) qualifies as a crime of violence under the “element” prong. Other circuits have held that even a general-intent crime may include the threatened use of physical force as an element if it includes the use of a deadly weapon as an element. See, e.g., United States v. Ramon Silva, 608 F.3d 663, 670-71, 674 (10th Cir.2010).[5] Most of these cases deal with assault or battery statutes that require only “the least touching,” but qualify as crimes of violence when the touching is accompanied by a deadly weapon. See United States v. Grajeda, 581 F.3d 1186, 1191-92 (9th Cir.2009); United States v. Dominguez, 479 F.3d 345, 348-49 (5th Cir.2007); cf. Ramon Silva, 608 F.3d at 672 (no touch was necessary because using a deadly weapon while engaging in menacing conduct that places someone in fear of an imminent battery “creates a commensurate threat of physical force”).
Not every crime becomes a crime of violence when committed with a deadly weapon, however. See, e.g., United States v. Baker, 559 F.3d 443, 452 (6th Cir.2009) (holding that Tennessee felonious reckless endangerment, which requires the use of a deadly weapon, was not a crime of violence). Similarly, not all crimes involving a deadly weapon have the threatened use of physical force as an element. Id. In the crime of violence context, “the phrase ‘physical force’ means violent force,” Johnson, 130 S.Ct. at 1270-71, and the use of a deadly weapon may transform a lesser degree of force into the necessary “violent force.” Nonetheless, the underlying crime must already have as an element some degree of, or the threat of, physical force in the more general sense (such as “the least touching”). The use of a deadly weapon may exacerbate the threat of physical force, but does not necessarily supply the threat if it is not already present in the underlying crime.[6]
Although using a deadly weapon while attempting to commit a battery, N.M. Stat. § 30-3-1 (A), or while engaging in an “unlawful act, threat or menacing conduct” that places someone in fear of an imminent battery, id. § 30-3-l(B), may constitute the kind of crime that employs the threatened use of physical force, doing so while “us[ing] ... insulting language toward another impugning his honor, delicacy or reputation,” id. § 30-3-l(C), does not.[7] *559 Even if the former qualified as a crime of violence under the element prong — an issue we do not decide — the latter would not.
C. Shepard Documents
Accordingly, we look to the Shepard documents to determine whether RedeMendez’s conviction necessarily rested on an intent to injure or frighten or on the commission of an unlawful act, threat, or menacing conduct (rather than simply the use of insulting language). The PSR author provided the district court with the information, plea agreement, and judgment from the New Mexico proceedings. These documents do not provide clarification, as they simply repeat the statutory language; the only additional details are the name of the victim and the type of weapon. The information charges that Rede-Mendez “did unlawfully assault or strike at Jessica Grimes with a knife, a deadly weapon or an instrument or object which, when used as a weapon, could cause death or very serious injury, contrary to NMSA 1978 § 30-3-2(A) (1963) (A fourth degree felony).” R.22-5 at 3. It does not reveal to what section of the assault statute Rede-Mendez pleaded or whether Rede-Mendez necessarily admitted to intentionally frightening the victim. In its approval of the plea agreement, the state trial court stated simply that “there exists a basis in fact for believing the defendant is guilty the [sic] offenses charged and that an independent record for such factual basis has been made.” R.22-6 at 6.
The PSR author also presented the statement of probable cause filed by the arresting officer, but Shepard prevents the district court from examining this document as evidence of the nature of a prior conviction. Like the complaint application in Shepard, 544 U.S. at 16, 125 S.Ct. 1254, and the preliminary-examination transcript in Medina-Almaguer, 559 F.3d at 423, a statement of probable cause is a “gateway step in the criminal process” that does not establish what acts were “necessarily admitted” by a later guilty plea, Medina-Almaguer, 559 F.3d at 423.
We recognize that Rede-Mendez does not contend that his aggravated-assault conviction was based on the use of insulting language. Nonetheless, the categorical approach requires us to consider “only the facts necessarily admitted by the defendant in pleading guilty even if we are forced to ‘feign agnosticism about clearly knowable facts.’ ” McMurray, 653 F.3d at 381 (quoting Shepard, 544 U.S. at 34-35, 125 S.Ct. 1254 (O’Connor, J., dissenting)). The defendant in Shepard, for example, had previously pleaded guilty to burglary, which under Massachusetts law could include breaking into a ship or a vehicle, but under the generic definition is limited to *560 breaking into a building or structure. 544 U.S. at 16-17, 125 S.Ct. 1254. The Supreme Court held that the sentence enhancement was improper because, even though the fact that the defendant had actually broken into buildings was essentially uncontested, the complaint contained the broader statutory language and no other state-court document that the district court could properly have considered suggested a narrower charge. Id. at 17, 21-22, 125 S.Ct. 1254. In order to avoid a similar result in this case, the New Mexico authorities could have drafted a more precise charge or required a more detailed plea agreement.
Without any indication as to whether Rede-Mendez’s aggravated-assault conviction fit within the generic definition or could have involved the threatened use of physical force, we cannot conclude that Rede-Mendez committed a crime of violence. The sentencing enhancement was thus improper.
III. CONCLUSION
Because the New Mexico offense of aggravated assault (deadly weapon) is broader than the generic definition of aggravated assault and can be committed in a way that does not involve the use or threatened use of physical force, and because the Shepard documents do not reveal what version of the offense Rede-Mendez necessarily admitted to committing when he pleaded guilty, Rede-Mendez’s prior conviction does not trigger the crime of violence enhancement under U.S.S.G. § 2L1.2. Therefore, we VACATE the district court’s judgment and REMAND for resentencing consistent with this opinion.

. 8 U.S.C. § 1326(a) describes the crime of unlawful reentry of removed aliens and sets a maximum term of imprisonment of two years. Section 1326(b)(2) sets a higher maximum term of imprisonment of twenty years for aliens whose removal followed conviction for an "aggravated felony.”

. Guideline § 4B1.2 (the career offender guideline), 18 U.S.C. § 16, and the Armed Career Criminal Act, 18 U.S.C. § 924(e), all employ the "use, attempted use, or threatened use of physical force” definition of crime of violence or violent felony, but also contain residual clauses, which include crimes that carry a "substantial risk that physical force against the person or property of another may be used in the course of committing the offense,” 18 U.S.C. § 16, or a "serious potential risk of physical injury to another,” 18 U.S.C. § 924(e)(2)(B); U.S.S.G. § 4B1.2. To the extent that cases interpreting these other provisions analyze the "element” prong, they are probative to an interpretation of U.S.S.G. § 2L1.2. See United States v. Vanhook, 640 F.3d 706, 712 n. 4 (6th Cir.2011) ("Given the similarity between the ACCA’s definition of 'violent felony’ and the definition of ‘crime of violence’ contained in the pertinent guideline provision, courts, including this one, have taken the position that authority interpreting one phrase is generally persuasive when intetpreting the other.”). Cases analyzing the residual clauses, by contrast, are not pertinent.
Relatedly, the fact that Rede-Mendez apparently does not challenge the application of *556 the statutory sentence enhancement of 8 U.S.C. § 1326(b)(2), which extends the potential sentence for unlawful reentry for defendants whose removal followed a conviction for an "aggravated felony,” is not necessarily relevant. Although "aggravated felony” is defined, in relevant part, by reference to the definition of "crime of violence” in 18 U.S.C. § 16, see 8 U.S.C. § 1101(a)(43)(F), that section contains the broader residual clause not found in § 2L1.2. A crime could thus be an aggravated felony for § 1326(b)(2) purposes but not a crime of violence for § 2L1.2 purposes.

. Although the statute contains no express mens rea requirement as to any element, New Mexico courts have consistently held that aggravated assault is a general-intent crime. See, e.g., Manus, 597 P.2d at 284 (explaining that the state must prove that the act constituting aggravated assault "was done with a general criminal intent”); State v. Bachicha, 111 N.M. 601, 808 P.2d 51, 54 (N.M.Ct.App.1991) ("Proof of general criminal intent is also a necessary element of the offense of aggravated assault.” (citing State v. Cruz, 86 N.M. 455, 525 P.2d 382 (N.M.Ct.App.1974))). For crimes without any express statutory mens rea requirement, we look to how state courts have construed the offense. See McFalls, 592 F.3d at 716.

. Under the Model Penal Code, a person is guilty of simple assault if he
(a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
(b) negligently causes bodily injury to another with a deadly weapon; or
(c) attempts by physical menace to put another in fear of imminent serious bodily injury.
Model Penal Code § 211.1(1). LaFave does not discuss insults, but notes that spoken threats do not constitute assault. 2 LaFave, Substantive Criminal Law § 16.3(b) ("[Tjhreatening words alone, without any overt act to carry out the threat ... will not do.”).

. Ramon Silva addressed the same statute at issue here. A divided panel of the Tenth Circuit held that the "menacing conduct” prong of the New Mexico aggravated-assault statute was a crime of violence when committed with a deadly weapon, but did not address the "insulting language" prong. See 608 F.3d at 670 (”[W]e focus our analysis on 'apprehension causing’ aggravated assault.”).

. Even if the use of a deadly weapon arguably carries with it a risk that physical force may be used, U.S.S.G. § 2L1.2 does not include a residual clause in its definition of crime of violence. See supra note 2.

.Although convictions under the "insulting language” prong of New Mexico’s assault statute appear to be quite rare, and would perhaps be unconstitutional, see State v. Parrillo, 94 N.M. 98, 607 P.2d 636, 637 (N.M.Ct.App.1979), the provision remains part of the New Mexico criminal code and thus available to prosecutors in that state. The likelihood that a defendant’s conviction was based on a particular version of the offense is not a factor in the crime of violence analysis. In Shepard, *559 for example, "[w]hat mattered was not how likely it was that Shepard had pleaded guilty to burglarizing buildings (or how unlikely it was that he had pleaded guilty to burglarizing 'ship[s], vesselfs] or vehicle[s]'), but whether the government could produce evidence showing that Shepard 'necessarily admitted’ to breaking into buildings when he entered his pleas.” Medina-Almaguer, 559 F.3d at 425 (citing Shepard, 544 U.S. at 16, 125 S.Ct. 1254).
Moreover, although the dissent suggests otherwise, New Mexico courts have never held that an aggravated-assault conviction cannot be based on an "insulting language” assault. In construing the elements of aggravated assault in State v. DeMary, the New Mexico Supreme Court held that, “because Section 30-3-2 actually uses the word assaulting in its definition of aggravated assault, it may become necessary to construe the definition of assault pursuant to Section 30-3-1, N.M.S.A.1978,” and proceeded to list each subsection of § 30-3-1, including subsection (C), the "insulting language” definition of assault. 99 N.M. 177, 655 P.2d 1021, 1023 (1982).