This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                    **NO. 32,385**

**HENRY LAWRENCE MARQUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Susan M. Riedel, District Judge**

Gary K. King, Attorney General
Corinna Laszlo-Henry, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

{1}     Defendant appeals his convictions for possession of a controlled substance and

possession of drug paraphernalia. Defendant argues that the State presented insufficient evidence that he had the requisite knowledge and control to support its theory that Defendant was in constructive possession of the drugs and paraphernalia. We hold that the State presented sufficient circumstantial evidence, beyond the mere presence of the contraband, from which the jury could reasonably infer Defendant's constructive possession of it. Therefore, we affirm Defendant's convictions.

**FACTUAL BACKGROUND**

{2}     The State presented the following evidence at trial. On March 14, 2012, at 3:54 a.m., Officer Fernandez was on routine traffic patrol and was driving behind Defendant's vehicle, described as a small, white Honda sedan. The officer ran a check on the license plate and discovered the identity and appearance of the registered owner of the car, that the owner had a suspended or revoked license, and that there was an arrest clause for him. The officer initiated his emergency lights and pulled over the vehicle. The vehicle stopped, and before the officer had a chance to approach, Defendant immediately stepped out of his vehicle and started walking toward Officer Fernandez, stating, "I know. I know. I shouldn't be driving. I'm not supposed to be driving." Officer Fernandez instantly recognized Defendant as the registered owner of the vehicle, but found Defendant's behavior unusual and concerning. He stated that usually people try to hide the fact that their license was suspended and usually drivers

wait in the vehicle for officers to approach them. The officer did not know what Defendant was trying to do and feared that he might try to fight or flee. As a result, Officer Fernandez handcuffed Defendant and placed him under arrest.

{3}     Defendant asked the officer several times to give him a chance and to not arrest him. After the officer refused and informed Defendant that his vehicle would be towed, Defendant asked the officer if the passenger could drive the vehicle instead of having it towed. The officer explained that he could only release the vehicle to the registered owner. While they were standing behind Defendant's vehicle and in front of Officer Fernandez's patrol car, the officer checked over the radio through central dispatch to determine whether Defendant had any outstanding warrants. Then the officer placed Defendant in the back of his patrol car.

{4}     The officer informed the passenger, who was seated in the front passenger seat, that he needed to get a ride because the vehicle was going to be towed. The passenger walked away. Officer Fernandez conducted an inventory search of the vehicle and found a black tar-like substance in a wrinkled piece of plastic located on the floorboard directly behind the driver's seat, within reach of the driver. The officer also found a needle and syringe on the driver's side in the space between the driver's bucket seat and the console. Suspecting that he had found heroin, the officer contacted the appropriate narcotics division for further investigation. Chemical

analysis confirmed that the substance was heroin. The narcotics agent called to the scene, Agent Munoz, testified that because black tar heroin is commonly injected by syringe and because the syringe was capped with the plunger pushed all the way down, the agent believed that the needle and syringe were drug paraphernalia that had been used.

{5} Agent Munoz testified that the heroin was not tested for fingerprints because the piece of plastic attached to it would not have yielded a successful print because it was small, crumbled, and opaque and the heroin was so sticky that anything might be connected to it. The agent further testified that he did not believe it was necessary to obtain fingerprints before charging Defendant with possession based on the location of the substance within reach of the driver and behind the driver's seat and because the vehicle belonged to the driver.

{6} Because Defendant was not found in actual, physical possession of the drugs and paraphernalia, the State proceeded on the theory of constructive possession. The jury found Defendant guilty of possessing heroin and drug paraphernalia. On appeal, Defendant argues that the State presented inadequate evidence to support his convictions because the passenger had equal access to the drugs and paraphernalia in the vehicle and there was insufficient other evidence from which the jury could draw legitimate inferences connecting Defendant, rather than the passenger, to the illegal

4

items to satisfy the requirements for possession.

**DISCUSSION**

{7}   "When reviewing a verdict for sufficiency of the evidence, our role is to determine whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72.  We view the evidence in the light most favorable to the verdict and resolve all conflicts and indulge all permissible inferences to uphold the conviction, disregarding all evidence and inferences to the contrary, to ensure that each element of the crime was established beyond a reasonable doubt. *See State v. Rojo*, 1999-NMSC-001, ¶¶ 19, 23, 126 N.M. 438, 971 P.2d 829. The reviewing court does "not re-weigh the evidence to determine if there was another hypothesis that would support innocence or replace the fact-finder's view of the evidence with the appellate court's own view of the evidence." *Garcia*, 2005-NMSC-017, ¶ 12.  The Supreme Court has also observed, however, "that evidence equally consistent with two hypotheses tends to prove neither." *Id.* (alteration, internal quotation marks, and citation omitted).  "In other words, evidence equally consistent with two inferences does not, without more, provide a basis for adopting either one—especially beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{8}** In the current case, the jury was instructed on the meaning of constructive possession. The instruction, UJI 14-3130 NMRA, states in relevant part:

> Even if the [illegal] substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it.
>
> A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession.

**{9}** Thus, "[p]roximity alone does not constitute possession." *Garcia*, 2005-NMSC-017, ¶ 13. In reviewing for sufficient evidence, "[t]his Court must be able to articulate a reasonable analysis that the [fact-finder] might have used to determine knowledge and control." *Id.* (second alteration in original) (internal quotation marks and citation omitted). Although the current case does not involve the same set of facts as any other constructive possession case, it involves similar, operative facts presented variously in other cases that combine here to create adequate proof of all the essential elements.

**{10}** As indicated, we must determine whether the jury was presented with sufficient evidence from which it could reasonably infer that Defendant had knowledge and control of the drugs and paraphernalia. The evidence shows that Defendant fled from his vehicle in an unusual manner upon getting pulled over, and shows that he made several attempts to keep the officer away from the vehicle and to prevent it from being searched and towed. The jury could reasonably conclude that Defendant's actions

were motivated by his knowledge that the contraband was in his vehicle, his fear of getting caught with it, and his attempt to exercise control over the contraband's whereabouts. *See id.* ¶ 14 (indicating that proof of knowledge may circumstantially derive from the defendant's own conduct and actions); *see also State v. Morales*, 2002-NMCA-052, ¶ 31, 132 N.M. 146, 45 P.3d 406 (stating that the defendant's flight from, and aggressiveness toward, the officers could be explained by his consciousness of guilt and fear of getting caught with heroin in the car), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

{11}    We also note that unlike the defendants in *Garcia* and *Morales*, cases to which this case seems most analogous, Defendant in the current case was both the driver and owner of the vehicle. *See State v. Lopez*, 2009-NMCA-044, ¶ 21, 146 N.M. 98, 206 P.3d 1003 (noting the importance of a defendant's ownership of a vehicle to the state's case establishing the defendant's control of a vehicle for constructive possession purposes); *Garcia*, 2005-NMSC-017, ¶¶ 4-5 (explaining that the defendant was a passenger in the vehicle and also not the owner); *Morales*, 2002-NMCA-052, ¶ 3 (stating that the defendant was the driver, but not the owner of the vehicle). It seems reasonable for a jury to consider that, generally, an owner driving his or her vehicle is aware of its contents and tends to exercise control over them. Also, it is undisputed in this case, as it was in *Morales*, that Defendant had been driving the

7

vehicle and "had [not] just become the driver. [The d]efendant was in control of the car." 2002-NMCA-052, ¶ 32.

{12}     In addition, it is significant that both the heroin, needle, and syringe were found on the driver's side of the vehicle, not the passenger's side.  In fact, the heroin was described as within the driver's reach, and the needle and syringe were next to the driver's bucket seat in the area of the driver's seatbelt buckle.  *See Garcia*, 2005-NMSC-017, ¶ 15 (observing that the gun and matching ammunition clip were on the defendant's side of the car, where his gun was under his seat next to his beer bottle and he was seated on the clip); *see also Morales*, 2002-NMCA-052, ¶ 32 (noting that in addition to the defendant's evasive and aggressive behavior, the heroin was found under the floor mat on the driver's side of the vehicle, the defendant was the driver, and the heroin was found directly under his feet). The officer gave no indication that he observed the passenger making any furtive movements or leaning behind the driver's seat during the time that he followed immediately behind the car, pulled it over, and stood directly behind it.

{13}     Lastly, we find it noteworthy that the passenger exercised no control over the heroin or syringe. While the passenger was present at the scene, the officer was not aware of the presence of the contraband in the vehicle and was not focused on the passenger at all.  The passenger was under no suspicion or close scrutiny when the

8

officer permitted him to arrange for a ride and leave the scene, and nevertheless, the passenger chose to walk away from the vehicle without the heroin or the syringe. *See Garcia*, 2005-NMSC-017, ¶ 23 (observing that the non-suspect driver of the car could have claimed the gun as his own, but did not do so).

{14} We conclude that the jury could draw legitimate inferences based on the evidence described above and that it was not left to engage in impermissible speculation about whether Defendant or the passenger had knowledge and control over the contraband. *See Morales*, 2002-NMCA-052, ¶ 29. "In other words, . . . the evidence [made] one of the two alternatives more likely than the other." *Id.* As our analysis indicates, the jury's verdict was not based on proximity alone. The combined effect of the evidence—the placement of the contraband on driver's side and within reach of the driver, combined with Defendant's attempts to keep the officer away from the vehicle, Defendant's ownership and control of the vehicle, and the passenger's failure to exercise any control over the contraband—gives rise to compounding and legitimate inferences that lead to the reasonable conclusion that Defendant had knowledge of the presence and nature of the contraband and control over it. *See id.* ¶ 33 (noting that the case was proven by "one inference supporting another, leading in combination to a reasonable conclusion that [the d]efendant was likely aware [of the contraband and exercised control over it]").

**CONCLUSION**

**{15}**   For the reasons stated above, we affirm Defendant's convictions for possession of heroin and drug paraphernalia.

**{16}**   **IT IS SO ORDERED**.

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**