This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                           **No. A-1-CA-35073**

**SHAWN LEE CENTENO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth A. Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**KIEHNE, Judge.**

{1}     Defendant appeals his conviction for distribution of imitation controlled

substances, arguing that it was improper for the State to introduce as evidence the results of a field test performed on the substances. We affirm.

**BACKGROUND**

{2}     Defendant sold substances to undercover police officers for $70, saying that they were ecstasy pills and crack cocaine. Defendant was then arrested by uniformed police officers after the transaction occurred. One of the undercover officers, Tillery Stahr, was the State's only witness at trial. Officer Stahr testified that on first glance, the substances looked like controlled substances, but that on closer inspection, she noticed several characteristics that led her to believe they were not controlled substances. For instance, the yellow pills that Defendant sold as ecstasy had raised markings on them, while in her experience, real ecstasy pills have markings stamped into them. Additionally, the substance sold as crack cocaine was a different color, had fewer jagged edges, and had a different density and fragility than genuine crack cocaine.

{3}     Officer Stahr also performed a Narcotic Identification Kit (NIK) field test, which came back as presumptively negative for a controlled substance. It is unclear from the record whether Officer Stahr performed the test before or after she observed how the substances sold differed from controlled substances. Officer Stahr further testified that a decision was made to charge Defendant with distribution of imitation

controlled substances based on the results of the NIK field test.

{4}    The State filed an untimely notice of intent to call an expert witness in the area of drug recognition and included Officer Stahr and the other police officers on its witness list. Defendant moved to strike this disclosure because it was untimely and argued that the results of the NIK field tests were inadmissible. The district court ruled that the State would not be able to call the witnesses as experts due to the late disclosure. Before trial, Defendant asked to clarify the court's order and argued that because no expert witness testimony would be presented, the results of the NIK field test should not be admissible. The district court ruled that the State could introduce the presumptively negative result of the NIK field test to explain the progress of the investigation, but could not use the test to conclusively establish what the substances were.

{5}    At trial, Officer Stahr testified as described above. In closing argument, Defendant argued to the jury that Officer Stahr should have had the substances sent to a chemist to confirm what the substances were. In response, during rebuttal, the State argued that when the results of the test are presumptively negative, the defendant is charged and the substance is not sent to a chemist for further testing.

**DISCUSSION**

{6}    We review the admission of scientific evidence for an abuse of discretion. *State*

3

*v. Torres*, 1999-NMSC-010, ¶ 27, 127 N.M. 20, 976 P.2d 20. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

{7}　　Defendant argues that under *State v. Morales*, 2002-NMCA-052, ¶ 23, 132 N.M. 146, 45 P.3d 406, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110, the NIK test results were inadmissible because expert testimony was not provided to explain the scientific reliability of the test. In *Morales*, we held that "the [s]tate has the burden to establish the validity of the scientific principles on which the test is based and its scientific reliability when the [s]tate elects to rely on a field test to prove the identity of the contraband." *Id.* Moreover, we stated that "testimony by a law enforcement officer will not, without more, be sufficient to support admission of the results, when the officer cannot explain the scientific principles that the test uses, the percentage of false positives or negatives that the test will produce, or the factors that may produce those false results." *Id.*

{8}　　In this case, the NIK test results were not introduced to prove that what the substances actually were, which is all the State is prohibited from doing under *Morales*. *See id.* Rather, the test results were introduced to explain the next step in the police investigation, which was to charge Defendant with distribution of imitation

4

controlled substances.

{9} Although we recognize the danger that the jury might have improperly used the NIK test results as evidence that the substance was not a controlled substance, we note that Defendant could have addressed this possibility by requesting a limiting instruction. *See* Rule 11-105 NMRA (stating that when evidence is admissible for one purpose but not another, "the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly"). Defendant did not ask for a limiting instruction. Given the discretion afforded to the district court in this matter, we hold that it was not an abuse of discretion for the district court to admit the NIK test results solely for the purpose of showing the progress of the police investigation in this case.

{10} We also note that the State does not have the burden of proving what the substances were, but must simply establish that the substances were not controlled substances. *See* NMSA 1978, § 30-31A-2(D) (1983) (defining an "imitation controlled substance" as "a substance that *is not a controlled substance* which by dosage unit appearance, including color, shape, size and markings and by representations made would lead a reasonable person to believe that the substance is a controlled substance" (emphasis added)). To establish that the substances were not controlled substances, the State relied on Officer Stahr's testimony that, based on her experience as a police officer who has encountered both controlled substances and imitation controlled

substances, the substances did not look or feel like genuine controlled substances. For this reason, this case is distinguishable from *Morales*, where the state had to prove that the substance that the defendant possessed was actually a controlled substance, and therefore had to prove that the scientific test used to identify that substance was reliable. *See Morales*, 2002-NMCA-052, ¶ 7; s*ee also* NMSA 1978, § 30-31-2(E) (2009) (defining a "controlled substance" as a particular substance listed in Schedules I through V of the Controlled Substances Act, NMSA 1978, §§ 30-31-6 to -10 (2005, as amended through 2011), or rules adopted in accord with those statutes).

**CONCLUSION**

{11}     For the foregoing reasons, we affirm the district court's evidentiary ruling.

{12}     **IT IS SO ORDERED.**


_____
**EMIL J. KIEHNE, Judge**

**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**


_____
**J. MILES HANISEE, Judge**