*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0095p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

PAULO SERGIO MEDINA-ALMAGUER,

　　　　　　　　*Defendant-Appellant.*

No. 07-4254

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00110—Donald C. Nugent, District Judge.

Argued: March 6, 2009

Decided and Filed: March 12, 2009

Before: KEITH, SUTTON and GRIFFIN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Thomas Patrick Ryan, LAW OFFICES, Cleveland, Ohio, for Appellant. Phillip J. Tripi, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jaime P. Serrat, Cleveland, Ohio, for Appellant. Michael J. Rendon, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

　　SUTTON, Circuit Judge. Paulo Sergio Medina-Almaguer appeals his 27-month sentence for illegal reentry after deportation. At stake is whether the district court properly characterized a 1989 state-court conviction as a "drug trafficking offense" under the sentencing guidelines.

I.

On September 19, 2007, Medina-Almaguer pleaded guilty to one count of illegal reentry following deportation. *See* 8 U.S.C. § 1326. In calculating his advisory guidelines range, the district court imposed a 16-level enhancement because Medina-Almaguer's deportation arose from a "drug trafficking offense." U.S.S.G. § 2L1.2(b)(1)(A). In 1989, he pleaded guilty to violating Cal. Health & Safety Code § 11352(a) (1989), which makes it a crime for any person to "transport, import . . . , sell, furnish, administer, or give away" a controlled substance or to "offer[]" to do those things.

Medina-Almaguer objected to the 16-level enhancement on the ground that the broad sweep of the California statute covers conduct that comes within § 2L1.2(b)(1)(A)'s definition of a "drug trafficking offense," as well as conduct that falls outside of it, and his guilty plea gave the district court no basis for determining whether his conduct amounted to a covered offense. The district court, however, did not just rely on the 1989 judgment in increasing Medina-Almaguer's sentence. It also looked to a preliminary-examination transcript from the 1989 state-court proceedings, which showed that he was arrested after selling heroin to an undercover police officer. Because a "drug trafficking offense" under the guidelines includes the "distribution . . . or dispensing of a controlled substance," U.S.S.G. § 2L1.2(b)(1)(A), app. note 1(B)(iv) (2006), the court concluded that the conviction amounted to a "drug trafficking offense."

The 16-level enhancement together with a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, left Medina-Almaguer with a 37–46 month guidelines range. Opting to vary his sentence downward because the predicate offense for the 16-level enhancement occurred nearly 18 years earlier and because Medina-Almaguer had (for the most part) stayed out of trouble since, the district court imposed a 27-month sentence.

II.

Medina-Almaguer's appeal raises one issue: Does his 1989 state-court conviction qualify as a "drug trafficking offense" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)?

The Sixth Amendment, to start, does not bar this inquiry. Even though the question at hand is whether a sentencing court permissibly increased Medina-Almaguer's guidelines

range based on a form of fact finding about his 1989 conviction, that kind of adjustment does not violate the Sixth Amendment because the Supreme Court has long exempted fact finding related to "prior conviction[s]," *Almendarez-Torres v. United States*, 523 U.S. 224, 243–44 (1998), and because such adjustments at any rate now apply to an advisory guidelines system, *United States v. Booker*, 543 U.S. 220, 245 (2005).

In determining the nature of a prior offense, courts normally start—and stop—by looking at "the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990). That categorical approach to the problem provides no answer here, because the state statute under which Medina-Almaguer was convicted punishes conduct that qualifies as a "drug trafficking offense" *and* conduct that does not. The application note to § 2L1.2 defines a "drug trafficking offense" as one that targets "the manufacture, import, export, distribution, or dispensing of a controlled substance" or the possession of a controlled substance with the intent to do those things. U.S.S.G. § 2L1.2(b)(1)(A), app. note 1(B)(iv) (2006). And the California statute makes it a crime to "transport, import into [the] state, sell, furnish, administer, or give away" a controlled substance or to "offer[]" to do these things. Cal. Health & Safety Code § 11352(a). The California law thus proscribes conduct that § 2L1.2 does not—namely, the "transport[ation]" of controlled substances and "offers" to perform the proscribed activities. *See, e.g.*, *People v. Beyah*, 88 Cal. Rptr. 3d 829, 832–33 (Cal. Ct. App. 2009); *People v. Encerti*, 182 Cal. Rptr. 139, 140, 144–45 (Cal. Ct. App. 1982); *see also United States v. Crawford*, 520 F.3d 1072, 1078 (9th Cir. 2008); *United States v. Gutierrez-Ramirez*, 405 F.3d 352, 356 (5th Cir. 2005). The "fact" of Medina-Almaguer's prior conviction under § 11352(a) together with "the statutory definition" of that offense, *Taylor*, 495 U.S. at 602, do not by themselves show that he was convicted of a "drug trafficking offense."

That does not end the inquiry, however. If the state-law definition of a prior offense covers more ground than the conduct reached by the federal-sentencing enhancement, a sentencing court may consult a limited range of judicial documents to determine the nature of the prior conviction. *See Shepard v. United States*, 544 U.S. 13, 20–21 (2005). In the context of a conviction stemming from a guilty plea—as Medina-Almaguer's predeportation conviction did—the question is whether the court documents establish that the defendant "necessarily admitted" the elements of a predicate offense through his plea. *Id.* at 16; *see*

*also id.* at 20–21, 26; *cf. Taylor*, 495 U.S. at 602.  For that purpose, a sentencing court generally may consider the charging document, a written plea agreement, a plea-colloquy transcript in which the defendant confirmed the factual basis for the plea or some other "comparable judicial record," *Shepard*, 544 at 26, so long as they establish what the defendant "necessarily admitted," *id.* at 16.  Otherwise, the sentencing court must stand by the fact of conviction and the definition of the offense—whether they establish the nature of the prior conviction or not.  *See, e.g.*, *United States v. McGrattan*, 504 F.3d 608, 615–616 (6th Cir. 2007); *United States v. Bernal-Aveja*, 414 F.3d 625, 627–28 (6th Cir. 2005).

In Medina-Almaguer's case, the 1989 information and abstract of judgment do not establish that he pleaded guilty to a "drug trafficking offense."  Both documents merely restate the text of § 11352(a) and offer no information about the specific acts, if any, that he admitted committing.  To its credit, the district court thus did not rely on the 1989 information and judgment in ratcheting up Medina-Almaguer's guidelines offense level.

The court, however, did believe that the transcript from his preliminary examination sufficed to support the enhancement.  At the preliminary examination, a police officer testified about a controlled drug buy with Medina-Almaguer, in which the officer gave Medina-Almaguer $20 in exchange for heroin.  Even granting for the sake of argument that a sentencing court may consult a preliminary-examination transcript in investigating the nature of a prior offense, this transcript does not show that Medina-Almaguer "necessarily admitted" to a "drug trafficking offense" when he pleaded guilty to violating § 11352(a).  Much like a police report or a complaint application—upon which sentencing courts may not rely in determining the nature of a prior conviction, *see Shepard*, 544 U.S. at 16—a preliminary examination deals with a gateway step in the criminal process:  determining whether probable cause exists for detaining a suspect before a potential indictment or information.  The examination takes place before the State has filed an information charging the defendant with a crime, *see* Cal. Penal Code §§ 738, 739, and its purpose is to determine "whether there exists probable cause to believe that the defendant has committed a felony," *id.* § 866(b); *cf. Shepard*, 544 U.S. at 21.

No doubt, a police officer testified at the preliminary examination that Medina-Almaguer sold heroin to him.  But that testimony showed only that the examining magistrate

properly concluded that there was "sufficient cause" to believe that Medina-Almaguer violated § 11352(a). Medina-Almaguer did not admit that conduct during the examination, nor so far as the record shows did he admit that conduct when he pleaded guilty. The transcript at most provides a basis for establishing probable cause to hold him for violating the statute and perhaps for violating the statute in this way. But it does not follow that the transcript establishes the acts that he "necessarily admitted" when he later pleaded guilty.

*United States v. Jones*, 453 F.3d 777, 780 (6th Cir. 2006), we realize, held that a sentencing court may determine the nature of a prior offense based on an "affidavit of complaint," which describes "the essential facts constituting the offense charged" and is used to obtain an arrest warrant, Tenn. R. Crim. P. 3(c); *see also* Tenn. Code Ann. § 40-6-203. An affidavit of complaint, we also realize, is similar to preliminary-examination testimony in at least one respect: It has "substantially greater indicia of reliability than mere police reports" because it is given "under oath and submitted in furtherance of formal prosecution." *Jones*, 453 F.3d at 780.

Although *Jones* provides some support for the government's argument, it does not provide enough. As we have since explained, *Jones* held that sentencing courts may rely on affidavits of complaint "only" for "the limited inquiry of whether prior offenses constitute a single criminal episode or multiple episodes," *United States v. Wells*, 473 F.3d 640, 647 n.5 (6th Cir. 2007), a question that goes to whether prior offenses qualify as "convictions [for crimes] . . . committed on occasions different from one another" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). *Jones* did not address—it had no occasion to address—whether a sentencing court may rely on an affidavit of complaint to determine what kind of conduct a defendant necessarily admitted in pleading guilty.

In pushing us to extend *Jones* to this setting, the government may be right that preliminary-examination transcripts are "reliab[le]." Br. at 15 (internal quotation marks omitted). The problem is, they are not reliable in the sense that matters. The question is not whether the preliminary-examination transcript accurately captures the officer's testimony or even whether the officer testified truthfully. It is whether the document establishes what Medina-Almaguer admitted when he pleaded guilty. *See Shepard*, 544 U.S. at 20–21. Medina-Almaguer did not testify during this hearing, and his attorney did not enter any

relevant concessions on his behalf. The hearing transcript then necessarily does not show what he admitted, and as it turns out neither does the abstract of judgment, which contains nothing more than the fact that he was convicted for violating a broadly written statute.

We need not decide whether a preliminary-examination transcript is "an appropriate document upon which to rely when determining the nature of a previous offense." Appellee Br. at 15. Even assuming it is, the preliminary-examination transcript before us does not identify the conduct Medina-Almaguer necessarily admitted when he entered his guilty plea. Just as a charging document, written plea agreement or plea-colloquy transcript—which sentencing courts clearly may use, *see Shepard*, 544 U.S. at 20–21—may not suffice to show that a defendant was previously convicted of a predicate offense in some cases, so the same may be true with some preliminary-examination transcripts. *See id.* at 21.

However probable it may be that an officer's testimony at a preliminary examination correctly establishes the facts of an offense to which a defendant later admits guilt, *Shepard* requires more than probable inferences and likely implications. It requires a judicial record that identifies the facts a defendant "necessarily admitted" in entering a guilty plea—as *Shepard* itself demonstrates. The question there was whether the prior offenses involved "violent felon[ies]" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). They met this requirement if they amounted to "generic" burglaries, involving the burglarizing of buildings or related structures. *Shepard*, 544 U.S. at 16–17. They did not meet this requirement if they amounted to "nongeneric" burglaries, involving the burglarizing of "ship[s], vessel[s] or vehicle[s]." Mass. Laws Ann., ch. 266, § 16; *see Shepard*, 544 U.S. at 17, 22. The police reports and complaint applications in *Shepard* made it exceedingly likely that Shepard's guilty pleas related to burglaries of *buildings*, and Shepard offered no evidence suggesting that he had been breaking and entering into "ship[s], vessel[s] or vehicle[s]." *See Shepard*, 544 U.S. at 22; *id.* at 35 (O'Connor, J., dissenting). Nonetheless, the Court required more: What mattered was not how likely it was that Shepard had pleaded guilty to burglarizing buildings (or how unlikely it was that he had pleaded guilty to burglarizing "ship[s], vessel[s] or vehicle[s]"), but whether the government could produce evidence showing that Shepard "necessarily admitted" to breaking into buildings when he entered his pleas. *Id.* at 16. Because it could not, the sentencing court could not count Shepard's prior convictions as predicate offenses under the statute.

The same conclusion applies here.  We therefore remand the case for resentencing, making it unnecessary to reach Medina-Almaguer's other sentencing arguments.

III.

For these reasons, we vacate the sentence and remand the case to the district court for resentencing.