RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0144p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

                    *v.*                                              No. 10-2509

ANDRES REDE-MENDEZ,
                              *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 10-00180-001—Robert J. Jonker, District Judge.

Argued: September 22, 2011

Decided and Filed: May 21, 2012

Before: MOORE, GRIFFIN, and WHITE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Lawrence J. Phelan, HAEHNEL & PHELAN, Grand Rapids, Michigan, for
Appellant. John F. Salan, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids,
Michigan, for Appellee. **ON BRIEF:** Lawrence J. Phelan, HAEHNEL & PHELAN,
Grand Rapids, Michigan, for Appellant. John F. Salan, ASSISTANT UNITED STATES
ATTORNEY, Grand Rapids, Michigan, for Appellee.

        MOORE, J., delivered the opinion of the court, in which WHITE, J., joined.
GRIFFIN, J. (pp. 11–22), delivered a separate dissenting opinion.

_____

**OPINION**

_____

        KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Andres Rede-
Mendez appeals his sentence of thirty-six months of imprisonment for reentering the
United States after having been removed following a conviction for an aggravated felony
in violation of 8 U.S.C. § 1326(a) and (b)(2). Rede-Mendez challenges the district

1

court's use of a sixteen-level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") Manual § 2L1.2, contending that his prior conviction for aggravated assault (deadly weapon) under New Mexico law did not constitute a crime of violence meriting the enhancement. Because aggravated assault under New Mexico law is not categorically a crime of violence and the available *Shepard* documents do not reveal what version of the offense Rede-Mendez committed, we VACATE the judgment of the district court and REMAND for resentencing consistent with this opinion.

## I. BACKGROUND

On April 14, 2010, Andres Rede-Mendez was arrested in Berrien County, Michigan for operating under the influence and driving without a license. In a subsequent interview with Immigration and Customs Enforcement agents, Rede-Mendez admitted that he had reentered the United States without permission in 2007 after having been removed to Mexico in 2003. The 2003 removal followed a conviction in New Mexico state court for aggravated assault (deadly weapon) in violation of New Mexico Statute § 30-3-2(A). Rede-Mendez was indicted on one count of reentering the United States after having been removed following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).[1] He pleaded guilty on August 17, 2010.

The Presentence Investigation Report ("PSR") utilized U.S.S.G. § 2L1.2, which sets a base offense level of eight for the crime of Unlawfully Entering or Remaining in the United States and provides for a sixteen-level enhancement if the defendant "previously was deported . . . after a conviction for a felony that is . . . a crime of violence," U.S.S.G. § 2L1.2(b)(1)(A)(ii). Concluding that Rede-Mendez's aggravated-assault conviction constituted a crime of violence, the PSR applied the sixteen-level increase. The PSR subtracted three levels for Rede-Mendez's acceptance of responsibility. With a criminal history category of IV and an offense level of twenty-one, the recommended guidelines range was 57-71 months of imprisonment.

---

[1] 8 U.S.C. § 1326(a) describes the crime of unlawful reentry of removed aliens and sets a maximum term of imprisonment of two years. Section 1326(b)(2) sets a higher maximum term of imprisonment of twenty years for aliens whose removal followed conviction for an "aggravated felony."

Rede-Mendez objected to the report, arguing that the aggravated-assault conviction was not a crime of violence. The district court overruled Rede-Mendez's objections and applied the enhancement, concluding that the New Mexico statute's inclusion of the use of a deadly weapon as an aggravating factor meant that the crime fell within the generic definition of aggravated assault and had the use or threatened use of physical force as an element. The court also departed downward one criminal history level, however, which reduced the guidelines range to 46-57 months of imprisonment. Reasoning that Rede-Mendez's offense was a relatively minor crime of violence compared to other crimes that also bear that designation and that, as a deportable alien, he would not be able to take advantage of certain rehabilitative programs while confined, the district court imposed a below-guidelines sentence of 36 months of imprisonment.

Rede-Mendez filed a timely notice of appeal, alleging that his sentence was procedurally unreasonable due to the sixteen-level enhancement for a prior felony crime of violence.

## II. ANALYSIS

### A. Crime of Violence

This case again requires us to determine whether a particular criminal offense triggers an enhanced sentence by qualifying as a crime of violence, by now a common but no less difficult task. We review de novo a district court's conclusion that a crime constitutes a crime of violence for sentencing purposes. *United States v. Soto-Sanchez*, 623 F.3d 317, 319 (6th Cir. 2010).

The Application Notes to U.S.S.G. § 2L1.2 define "crime of violence" as certain enumerated offenses—including "aggravated assault"—and "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).[2]

---

[2]Guideline § 4B1.2 (the career offender guideline), 18 U.S.C. § 16, and the Armed Career Criminal Act, 18 U.S.C. § 924(e), all employ the "use, attempted use, or threatened use of physical force" definition of crime of violence or violent felony, but also contain residual clauses, which include crimes that carry a "substantial risk that physical force against the person or property of another may be used in

Although we are bound by a state court's interpretation of state criminal law, including the elements of a crime, the ultimate issue of whether a crime is a crime of violence is a question of federal law. *United States v. Rodriguez*, 664 F.3d 1032, 1037 (6th Cir. 2011) (citing *Johnson v. United States*, — U.S. —, 130 S. Ct. 1265, 1269 (2010)).

In determining the nature of a prior conviction, we apply a "categorical" approach, looking to the statutory definition of the offense and not the particular facts underlying the conviction. *Sykes v. United States*, — U.S. —, 131 S. Ct. 2267, 2272 (2011) (quoting *James v. United States*, 550 U.S. 192, 202 (2007)); *Soto-Sanchez*, 623 F.3d at 320-21. Nor does a specific offense automatically qualify as a crime of violence just because it has the same name as one of the enumerated offenses. *Taylor v. United States*, 495 U.S. 575, 588-89 (1990). Rather, the offense for which the defendant was convicted must fall within the generic definition of that crime, which is found by surveying how the crime is described across jurisdictions, as well as consulting sources such as the Model Penal Code. *Id.* at 598 & n.8; *United States v. McFalls*, 592 F.3d 707, 716-17 (6th Cir. 2010).

If a state criminal statute could be violated in a way that would constitute a crime of violence and in a way that would not, we look beyond the statutory language and examine certain state-court documents (the "*Shepard* documents") to determine whether the conviction necessarily depended on the commission of a crime of violence. *United States v. McMurray*, 653 F.3d 367, 372 (6th Cir. 2011) (quoting *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010)); *see also Shepard v. United States*, 544 U.S. 13, 16-

---

the course of committing the offense," 18 U.S.C. § 16, or a "serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B); U.S.S.G. § 4B1.2. To the extent that cases interpreting these other provisions analyze the "element" prong, they are probative to an interpretation of U.S.S.G. § 2L1.2. *See United States v. Vanhook*, 640 F.3d 706, 712 n.4 (6th Cir. 2011) ("Given the similarity between the ACCA's definition of 'violent felony' and the definition of 'crime of violence' contained in the pertinent guideline provision, courts, including this one, have taken the position that authority interpreting one phrase is generally persuasive when interpreting the other."). Cases analyzing the residual clauses, by contrast, are not pertinent.

Relatedly, the fact that Rede-Mendez apparently does not challenge the application of the statutory sentence enhancement of 8 U.S.C. § 1326(b)(2), which extends the potential sentence for unlawful reentry for defendants whose removal followed a conviction for an "aggravated felony," is not necessarily relevant. Although "aggravated felony" is defined, in relevant part, by reference to the definition of "crime of violence" in 18 U.S.C. § 16, *see* 8 U.S.C. § 1101(a)(43)(F), that section contains the broader residual clause not found in § 2L1.2. A crime could thus be an aggravated felony for § 1326(b)(2) purposes but not a crime of violence for § 2L1.2 purposes.

17 (2005).  When the prior conviction resulted from a guilty plea, we look to documents that identify what facts the defendant "'necessarily admitted'" by pleading guilty. *United States v. Medina-Almaguer*, 559 F.3d 420, 423 (6th Cir. 2009) (quoting *Shepard*, 544 U.S. at 16).  Such documents can include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," *Shepard*, 544 U.S. at 16; we do not, by contrast, consider police reports or complaint applications, *id.*  This approach ensures that sentencing hearings do not become collateral trials.  *Id.* at 23.

## B.  New Mexico Aggravated Assault—Categorical Analysis

### 1.  Enumerated-Offense Prong

In New Mexico, aggravated assault (deadly weapon) is defined as "unlawfully assaulting or striking at another with a deadly weapon."  N.M. Stat. § 30-3-2(A). Assault is in turn defined as "(A) an attempt to commit a battery upon the person of another; (B) any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or (C) the use of insulting language toward another impugning his honor, delicacy or reputation." *Id.* § 30-3-1.

Under the Model Penal Code, a defendant commits aggravated assault if he or she

    (a)  attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life, or

    (b)  attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon[.]

Model Penal Code § 211.1(2).  We have recognized the Model Penal Code definition of aggravated assault as the generic definition for the purpose of deciding whether a crime with that label is a crime of violence, at least in states which have merged the crimes of assault and battery.  *McFalls*, 592 F.3d at 717.  Professor LaFave likewise explains that, in jurisdictions like New Mexico that retain a distinct crime of assault in which the fear

of injury is sufficient for conviction, "there must be an actual intention to cause apprehension." 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.3(b) (2d ed. 2003).

As the government acknowledges, New Mexico's definition of aggravated assault "is broader than the Model Penal Code based definition." United States Rule 28(j) Letter of Sept. 20, 2011. The New Mexico version of aggravated assault differs from the generic version most significantly in the mens rea it attaches to the element of bodily injury or fear of injury. Unlike the Model Penal Code or LaFave definitions, the New Mexico statute does not require specific intent to injure or to frighten the victim. *See, e.g.*, *State v. Manus*, 597 P.2d 280, 284 (N.M. 1979), *overruled on other grounds*, *Sells v. State*, 653 P.2d 162 (N.M. 1982); *State v. Morales*, 45 P.3d 406, 414-15 (N.M. Ct. App. 2002). Instead, aggravated assault in New Mexico requires general criminal intent, which consists of "conscious wrongdoing or the purposeful doing of an act that the law declares to be a crime." *State v. Campos*, 921 P.2d 1266, 1277 n.5 (N.M. 1996).[3]

New Mexico's definition of aggravated assault is also broader than the generic version because the underlying assault can be committed solely by using insulting language. Neither the Model Penal Code nor LaFave recognize insult to honor or reputation as the basis for an assault conviction.[4] Because the New Mexico definition of aggravated assault is broader than the Model Penal Code definition, which we have recognized as the generic definition of that crime, we conclude that Rede-Mendez's

---

[3]Although the statute contains no express mens rea requirement as to any element, New Mexico courts have consistently held that aggravated assault is a general-intent crime. *See, e.g.*, *Manus*, 597 P.2d at 284 (explaining that the state must prove that the act constituting aggravated assault "was done with a general criminal intent"); *State v. Bachicha*, 808 P.2d 51, 54 (N.M. Ct. App. 1991) ("Proof of general criminal intent is also a necessary element of the offense of aggravated assault." (citing *State v. Cruz*, 525 P.2d 382 (N.M. Ct. App. 1974))). For crimes without any express statutory mens rea requirement, we look to how state courts have construed the offense. *See McFalls*, 592 F.3d at 716.

[4]Under the Model Penal Code, a person is guilty of simple assault if he
(a)    attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
(b)    negligently causes bodily injury to another with a deadly weapon; or
(c)    attempts by physical menace to put another in fear of imminent serious bodily injury.
Model Penal Code § 211.1(1). LaFave does not discuss insults, but notes that spoken threats do not constitute assault. 2 LaFave, *Substantive Criminal Law* § 16.3(b) ("[T]hreatening words alone, without any overt act to carry out the threat . . . will not do.").

conviction was not categorically a crime of violence under the enumerated-offense prong of U.S.S.G. § 2L1.2.

### 2. "Element" Prong

The broad definition of assault likewise obstructs any argument that New Mexico aggravated assault (deadly weapon) qualifies as a crime of violence under the "element" prong. Other circuits have held that even a general-intent crime may include the threatened use of physical force as an element if it includes the use of a deadly weapon as an element. *See, e.g.*, *United States v. Ramon-Silva*, 608 F.3d 663, 670-71, 674 (10th Cir. 2010).[5] Most of these cases deal with assault or battery statutes that require only "the least touching," but qualify as crimes of violence when the touching is accompanied by a deadly weapon. *See United States v. Grajeda*, 581 F.3d 1186, 1191-92 (9th Cir. 2009); *United States v. Dominguez*, 479 F.3d 345, 348-49 (5th Cir. 2007); *cf. Ramon-Silva*, 608 F.3d at 672 (no touch was necessary because using a deadly weapon while engaging in menacing conduct that places someone in fear of an imminent battery "creates a commensurate threat of physical force").

Not every crime becomes a crime of violence when committed with a deadly weapon, however. *See, e.g.*, *United States v. Baker*, 559 F.3d 443, 452 (6th Cir. 2009) (holding that Tennessee felonious reckless endangerment, which requires the use of a deadly weapon, was not a crime of violence). Similarly, not all crimes involving a deadly weapon have the threatened use of physical force as an element. *Id.* In the crime of violence context, "the phrase 'physical force' means *violent* force," *Johnson*, 130 S. Ct. at 1270-71, and the use of a deadly weapon may transform a lesser degree of force into the necessary "violent force." Nonetheless, the underlying crime must already have as an element some degree of, or the threat of, physical force in the more general sense (such as "the least touching"). The use of a deadly weapon may exacerbate the threat

---

[5]*Ramon-Silva* addressed the same statute at issue here. A divided panel of the Tenth Circuit held that the "menacing conduct" prong of the New Mexico aggravated-assault statute was a crime of violence when committed with a deadly weapon, but did not address the "insulting language" prong. *See* 608 F.3d at 670 ("[W]e focus our analysis on 'apprehension causing' aggravated assault.").

of physical force, but does not necessarily supply the threat if it is not already present in the underlying crime.[6]

Although using a deadly weapon while attempting to commit a battery, N.M. Stat. § 30-3-1(A), or while engaging in an "unlawful act, threat or menacing conduct" that places someone in fear of an imminent battery, *id.* § 30-3-1(B), may constitute the kind of crime that employs the threatened use of physical force, doing so while "us[ing] . . . insulting language toward another impugning his honor, delicacy or reputation," *id.* § 30-3-1(C), does not.[7]   Even if the former qualified as a crime of violence under the element prong—an issue we do not decide—the latter would not.

## C. *Shepard* Documents

Accordingly, we look to the *Shepard* documents to determine whether Rede-Mendez's conviction necessarily rested on an intent to injure or frighten or on the commission of an unlawful act, threat, or menacing conduct (rather than simply the use of insulting language).  The PSR author provided the district court with the information, plea agreement, and judgment from the New Mexico proceedings.  These documents do not provide clarification, as they simply repeat the statutory language; the only additional details are the name of the victim and the type of weapon.  The information charges that Rede-Mendez "did unlawfully assault or strike at Jessica Grimes with a

---

[6]Even if the use of a deadly weapon arguably carries with it a risk that physical force may be used, U.S.S.G. § 2L1.2 does not include a residual clause in its definition of crime of violence. *See supra* note 2.

[7]Although convictions under the "insulting language" prong of New Mexico's assault statute appear to be quite rare, and would perhaps be unconstitutional, *see State v. Parrillo*, 607 P.2d 636, 637 (N.M. Ct. App. 1979), the provision remains part of the New Mexico criminal code and thus available to prosecutors in that state.  The likelihood that a defendant's conviction was based on a particular version of the offense is not a factor in the crime of violence analysis.  In *Shepard*, for example, "[w]hat mattered was not how likely it was that Shepard had pleaded guilty to burglarizing buildings (or how unlikely it was that he had pleaded guilty to burglarizing 'ship[s], vessel[s] or vehicle[s]'), but whether the government could produce evidence showing that Shepard 'necessarily admitted' to breaking into buildings when he entered his pleas."  *Medina-Almaguer*, 559 F.3d at 425 (citing *Shepard*, 544 U.S. at 16).

Moreover, although the dissent suggests otherwise, New Mexico courts have never held that an aggravated-assault conviction cannot be based on an "insulting language" assault.  In construing the elements of aggravated assault in *State v. DeMary*, the New Mexico Supreme Court held that, "because Section 30–3–2 actually uses the word *assaulting* in its definition of aggravated assault, it may become necessary to construe the definition of assault pursuant to Section 30–3–1, N.M.S.A.1978," and proceeded to list each subsection of § 30-3-1, including subsection (C), the "insulting language" definition of assault. 655 P.2d 1021, 1023 (N.M. 1982).

knife, a deadly weapon or an instrument or object which, when used as a weapon, could cause death or very serious injury, contrary to NMSA 1978 § 30-3-2(A) (1963) (A fourth degree felony)." R.22-5 at 3. It does not reveal to what section of the assault statute Rede-Mendez pleaded or whether Rede-Mendez necessarily admitted to intentionally frightening the victim. In its approval of the plea agreement, the state trial court stated simply that "there exists a basis in fact for believing the defendant is guilty the [sic] offenses charged and that an independent record for such factual basis has been made." R.22-6 at 6.

The PSR author also presented the statement of probable cause filed by the arresting officer, but *Shepard* prevents the district court from examining this document as evidence of the nature of a prior conviction. Like the complaint application in *Shepard*, 544 U.S. at 16, and the preliminary-examination transcript in *Medina-Almaguer*, 559 F.3d at 423, a statement of probable cause is a "gateway step in the criminal process" that does not establish what acts were "necessarily admitted" by a later guilty plea, *Medina-Almaguer*, 559 F.3d at 423.

We recognize that Rede-Mendez does not contend that his aggravated-assault conviction was based on the use of insulting language. Nonetheless, the categorical approach requires us to consider "only the facts necessarily admitted by the defendant in pleading guilty even if we are forced to 'feign agnosticism about clearly knowable facts.'" *McMurray*, 653 F.3d at 381 (quoting *Shepard*, 544 U.S. at 34-35 (O'Connor, J., dissenting)). The defendant in *Shepard*, for example, had previously pleaded guilty to burglary, which under Massachusetts law could include breaking into a ship or a vehicle, but under the generic definition is limited to breaking into a building or structure. 544 U.S. at 16-17. The Supreme Court held that the sentence enhancement was improper because, even though the fact that the defendant had actually broken into buildings was essentially uncontested, the complaint contained the broader statutory language and no other state-court document that the district court could properly have considered suggested a narrower charge. *Id.* at 17, 21-22. In order to avoid a similar

result in this case, the New Mexico authorities could have drafted a more precise charge or required a more detailed plea agreement.

Without any indication as to whether Rede-Mendez's aggravated-assault conviction fit within the generic definition or could have involved the threatened use of physical force, we cannot conclude that Rede-Mendez committed a crime of violence. The sentencing enhancement was thus improper.

### III.  CONCLUSION

Because the New Mexico offense of aggravated assault (deadly weapon) is broader than the generic definition of aggravated assault and can be committed in a way that does not involve the use or threatened use of physical force, and because the *Shepard* documents do not reveal what version of the offense Rede-Mendez necessarily admitted to committing when he pleaded guilty, Rede-Mendez's prior conviction does not trigger the crime of violence enhancement under U.S.S.G. § 2L1.2.  Therefore, we VACATE the district court's judgment and REMAND for resentencing consistent with this opinion.

———————————

**DISSENT**

———————————

GRIFFIN, Circuit Judge, dissenting.  I respectfully disagree with the majority's conclusion that defendant Rede-Mendez's prior New Mexico conviction for aggravated assault (deadly weapon) is not a crime of violence that triggers the sixteen-level sentencing enhancement of U.S.S.G. § 2L1.2(b)(1)(A).  Two of our sister circuits have held that aggravated assault with a deadly weapon committed in violation of N.M. Stat. § 30-3-2(A) has as an element "the use, attempted use, or threatened use of physical force against the person of another" and therefore qualifies as a crime of violence for sentencing purposes.  *See United States v. Silva*, 608 F.3d 663 (10th Cir. 2010), *cert. denied* 131 S. Ct. 1473 (2011); *United States v. Licon-Nunez*, 230 F. App'x 448 (5th Cir. 2007).  I would follow the rationale of these courts and hold that the district court properly applied the enhancement in the present case.  Therefore, Rede-Mendez's sentence is procedurally reasonable and should be affirmed.

I.

In March 2001, Rede-Mendez robbed a coffee shop in Ranchos de Taos, New Mexico, armed with a knife that he pointed at the store clerk.  He was apprehended approximately one month later, and a state criminal complaint was filed on April 17, 2001, in the Taos County, New Mexico, Magistrate Court.  The complaint charged in pertinent part:  "Count 2 – Aggravated Assault – [Rede-Mendez] [d]id unlawfully assault or strike at another to wit:  Jessica Grimes [the store clerk], with a deadly weapon to wit: a knife, contrary to Section 30-3-2A, N.M.S.A. 1978 (Fourth Degree Felony)."  It was sworn to under oath by a state police officer, with a statement of probable cause affixed to it.

In May 2001, a four-count criminal information was filed in the Eighth Judicial District Court for the County of Taos, New Mexico.  Count 2 of the information charged Rede-Mendez with aggravated assault (deadly weapon) and alleged that "on or about the 10th day of March, 2001, in Taos County, New Mexico, the above-named defendant did

unlawfully assault or strike at Jessica Grimes with a knife, a deadly weapon or an instrument or object which, when used as a weapon, could cause death or very serious injury, contrary to N.M.S.A. 1978 § 30-3-2(A) (1963) (A fourth degree felony)." On July 11, 2001, Rede-Mendez entered into a plea agreement and pled guilty to Count 2 of the information. The district court approved the plea agreement and, based on Rede-Mendez's plea, stated in its opinion that "there exists a basis in fact for believing the defendant is guilty of the offenses charged and that an independent record for such factual basis has been made." On July 13, 2001, the court sentenced Rede-Mendez to eighteen months of incarceration followed by one year of parole, suspended upon the condition that he was to remain in custody for a thirty-day period to allow the INS to deport him to his native country of Mexico. The judgment of conviction reiterated that Rede-Mendez "is convicted and stands guilty of the crime as charged in Count 2 of the Criminal Information of: AGGRAVATED ASSAULT (DEADLY WEAPON), contrary to N.M.S.A. 1978, § 30-3-2(A) (1963) (A fourth degree felony)."

Following his deportation and illegal return to the United States, Rede-Mendez was arrested by Michigan authorities in 2010 for operating under the influence of alcohol, a charge that flagged his illegal status and led to his federal indictment on one count of reentry of an illegal alien following deportation for an aggravated felony conviction, 8 U.S.C. § 1326(a). In August 2010, he pled guilty to the offense without a plea agreement. Over Rede-Mendez's objection, the district court held that his 2001 New Mexico conviction for aggravated assault (deadly weapon) constituted a "crime of violence" so as to warrant a sixteen-level sentencing enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). Despite the enhancement, the district court ultimately imposed a below-Guidelines sentence of 36 months of imprisonment because Rede-Mendez was a deportable alien and the court could not achieve the rehabilitative purposes of sentencing.

## II.

In order to constitute a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii), Rede-Mendez's offense must qualify as one of the enumerated offenses – in this case,

aggravated assault – "*or . . .* ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (Nov. 2011) (emphasis added). This definition is disjunctive; thus, a prior felony conviction is a crime of violence if it meets either one of these criteria.[1] *United States v. Palomino Garcia*, 606 F.3d 1317, 1326 (11th Cir. 2010); *United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009).

In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Supreme Court addressed the definition of "crime of violence" set forth in 18 U.S.C. § 16(a), which is identical in all relevant respects to the language of the element prong of § 2L1.2, cmt. n.1(B)(iii),[2] and determined that the phrase "use of physical force" connotes "active employment" and thus refers only to crimes that carry "a higher degree of intent than negligence or merely accidental conduct." *Id*. at 9. In the wake of the *Leocal* decision, we, and the majority of our sister circuits, have extended its rationale and held that crimes requiring only recklessness do not constitute crimes of violence or violent felonies under the element prongs of § 16(a), the ACCA, or § 2L1.2. *See United States v. McMurray*, 653 F.3d 367, 374-75 (6th Cir. 2011); *United States v. McFalls*, 592 F.3d 707, 716 (6th Cir. 2010); *United States v. Baker*, 559 F.3d 443, 453 (6th Cir. 2009); *United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006); *see also United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008) (and cases cited therein).

In a subsequent decision, the Supreme Court addressed the degree of physical force necessary to qualify as a violent felony under the ACCA and applied *Leocal's* reasoning to hold that "the phrase 'physical force' [under the ACCA] means *violent* force – that is, force capable of causing physical pain or injury to another person."

---

[1]The second criterion is henceforth referred to as the "element prong."

[2]In light of the identical language used in the element prongs of the career offender guideline (U.S.S.G. § 4B1.2(a)(1)), Armed Career Criminal Act ("ACCA") (18 U.S.C. § 924(e)(2)(B)(i)), 18 U.S.C. § 16(a), and U.S.S.G. § 2L1.2 cmt. n.1(B)(iii), to define "violent felony" and "crime of violence," we "have taken the position that authority interpreting one phrase is generally persuasive when interpreting the other." *United States v. Vanhook*, 640 F.3d 706, 712 n.4 (6th Cir. 2011); *see also United States v. McMurray*, 653 F.3d 367, 371 n.1, 373-74 (6th Cir. 2011).

*Johnson v. United States*, — U.S. — , 130 S. Ct. 1265, 1271, 176 L. Ed.2d 1 (2010); *see also McMurray*, 653 F.3d at 374.

"In determining the nature of a prior conviction, we are to apply a 'categorical' approach, looking to the statutory definition of the offense and not the particular facts underlying the conviction." *McMurray*, 653 F.3d at 372 (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)). "If it is possible to violate the statute in a way that would constitute a [violent felony or crime of violence] and in a way that would not, the court may [utilize a modified-categorical approach and] consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction." *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005), and *United States v. Gibb*, 626 F.3d 344, 352 (6th Cir. 2010)). "In a pleaded case, the documents must demonstrate that the plea . . . necessarily rested on the fact identifying the [crime as a qualifying offense]." *Id.* at 377 (citation and internal quotation marks omitted). "[T]wo types of proof . . . that might suffice to establish that a plea 'necessarily rested on the elements of a predicate offense [are]: (i) proof that the defendant admitted to predicate conduct when confirming the factual basis for a valid plea; [and] (ii) proof that the charge was narrowed to include only predicate conduct." *Id.* at 378 (citation and internal quotation marks omitted).

The New Mexico statute at issue defines "aggravated assault" with a deadly weapon as: "(A) unlawfully assaulting or striking at another with a deadly weapon; (B) committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or (C) willfully and intentionally assaulting another with intent to commit any felony." N.M. Stat. § 30-3-2. An aggravated assault by use of a deadly weapon requires only general criminal intent. *State v. Bachicha*, 808 P.2d 51, 54 (N.M. Ct. App. 1991).

An "assault" is further defined by New Mexico statute as: "(A) an attempt to commit a battery upon the person of another; (B) any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of

receiving an immediate battery; or (C) the use of insulting language toward another impugning his honor, delicacy or reputation." N.M. Stat. § 30-3-1.

The New Mexico courts have held that the crime of aggravated assault with a deadly weapon may occur under either of two theories: an assault by attempted battery with a deadly weapon, consistent with § 30-3-1(A); or by engaging in threatening or menacing conduct with a deadly weapon which causes the victim to believe that he or she was about to receive a battery – so-called "apprehension causing" aggravated assault, *see Silva*, 608 F.3d at 669 – consistent with § 30-3-1(B). *Bachicha*, 808 P.2d at 54; *State v. Woods*, 483 P.2d 504, 505 (N.M. Ct. App. 1971); *State v. Anaya*, 439 P.2d 561, 562-63 (N.M. Ct. App. 1968); N.M. U.J.I. (New Mexico Uniform Jury Instructions) 14-304 through 14-306.[3] *See also Silva*, 608 F.3d at 669 (discussing the two theories); *cf. United States v. Hammons*, No. CR 07-1164 JB, 2010 WL 4321693, at *20 (D. N.M. Oct. 6, 2010) (also discussing the two theories in the context of New Mexico's similar offense of aggravated assault against a family member with a deadly weapon).

As common and legal sense would dictate, the New Mexico courts do not recognize a theory of aggravated assault with a deadly weapon arising from "the use of

---

[3]N.M. U.J.I. 14-306 sets forth the elements of these two theories:

For you to find the defendant guilty of aggravated assault by use of a deadly weapon [as charged in Count ____], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant tried to touch or apply force to ____ (*name of victim*) by ____;
2. The defendant acted in a rude, insolent or angry manner;
3. The defendant intended to touch or apply force to _____ (*name of victim*) by ____;

OR

1. The defendant ____ (*describe unlawful act, threat or menacing conduct*);
2. The defendant's conduct caused ____ (*name of victim*) to believe the defendant was about to intrude on _____'s (*name of victim*) bodily integrity or personal safety by touching or applying force to ____ (*name of victim*) in a rude, insolent or angry manner;
3. A reasonable person in the same circumstances as ____ (*name of victim*) would have had the same belief;

AND

4. The defendant used a [____] deadly weapon. The defendant used a ____ (*name of object*). A ____ (*name of object*) is a deadly weapon only if you find that a ____ (*name of object*), when used as a weapon, could cause death or great bodily harm[.]

insulting language toward another impugning his honor, delicacy or reputation" under Subsection (C) of New Mexico's simple assault statute, § 30-3-1(C).

In the present case, it is clear from the relevant state-court documents that Rede-Mendez was charged under N.M. Stat. 30-3-2(A). Regardless of whether the New Mexico offense of aggravated assault by use of a deadly weapon fits within the generic definition of "aggravated assault," Rede-Mendez's prior conviction under § 30-3-2(A) qualifies as a crime of violence because under either the attempted battery or apprehension causing theories of aggravated assault, it "has as an element the use, attempted use, or threatened use of physical force against the person of another,"as the Fifth and Tenth Circuits have held in *Licon-Nunez* and *Silva*, respectively.

In *Licon-Nunez*, the Fifth Circuit employed the categorical approach to conclude that the defendant's prior conviction for aggravated assault with a deadly weapon under § 30-3-2 was a crime of violence under § 2L1.2's element prong. *Licon-Nunez*, 230 F. App'x at 451. Because Licon-Nunez's indictment tracked the language of § 30-3-2(A),[4] the court construed the requisite elements of the offense as "(1) the unlawful assaulting or striking at another and (2) the use of a deadly weapon," with the first element specifically requiring that the defendant tried to and intended to touch or apply force to the victim while acting in a rude, insolent, or angry manner. *Id*. (citing N.M. U.J.I. 14-304). The court rejected Licon-Nunez's argument that the offense does not require an element of the threatened use of physical force because it can be committed by means of offensive touching rather than by the application of force:

> We have recently held that the offensive touching of an individual with a deadly weapon creates a sufficient threat of force to qualify as a crime of violence. *[United States v.] Dominguez*, 479 F.3d [345, 348 (5th Cir. 2007)]. In *Dominguez*, the Court considered whether the Florida offense of aggravated battery by use of a deadly weapon, which can be committed via the intentional touching of a victim with a deadly weapon, was a crime of violence. The Court determined that even though an intentional touching with a deadly weapon might not itself cause injury,

---

[4] The indictment charged that Licon-Nunez "did assault or strike at Cesar Esparza with a deadly weapon, to wit:  a knife, a fourth degree felony contrary to Section 30-3-2A NMSA 1978." *Id*. at 451.

as required for an actual use of force, "it could lead to more violent contact, or could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force." *Id*. at 349. We think the same may be said of the New Mexico crime of aggravated assault by use of a deadly weapon. While the New Mexico crime differs from the crime in *Dominguez* because the former does not require an actual touching, the attempt to offensively touch a victim with a deadly weapon combined with the intent to do the same is enough to give rise to a threatened use of force under the reasoning in *Dominguez*. Thus, Licon-Nunez's conviction for aggravated assault by use of a deadly weapon qualifies as a crime of violence warranting a sentence enhancement under § 2L1.2.

*Id*. at 452.

In *Silva*, a panel majority of the Tenth Circuit reached a similar conclusion with regard to § 30-3-2(A), holding that the defendant's prior conviction for "apprehension causing" aggravated assault with a deadly weapon qualified as a "violent felony" under the ACCA. *Silva*, 608 F.3d at 670. The underlying New Mexico indictment alleged that Silva "did unlawfully assault or strike at [the victim], with a firearm, which was a deadly weapon." *Id*. at 669 n.3 (citation omitted). Silva entered a plea of no contest to the charge pursuant to a written plea agreement. *Id*. At his sentencing on federal charges of possession of a firearm after conviction of a felony, the district court imposed the ACCA's fifteen-year mandatory minimum sentence enhancement based on its finding that the aggravated assault conviction had as an element the use or threatened use of physical force and, therefore, qualified as a violent felony. The Tenth Circuit affirmed the district court's decision.

The *Silva* court characterized the crime as "apprehension causing" aggravated assault, which "'requires proof that [the] defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery,'" the use of a deadly weapon, and proof of general criminal intent. *Id*. at 670 (quoting *Bachicha*, 808 P.2d at

54).**5**  Considering these elements together, the court held that § 30-3-2(A) involves active violent force:

> "[A]pprehension causing" aggravated assault in New Mexico includes as an element the threatened use of "force capable of causing physical pain or injury to another person." *See Johnson*, 130 S. Ct. at 1271. Threatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of "*violent* force" because by committing such an act, the aggressor communicates to his victim that he will potentially use "*violent* force" against the victim in the near-future. Additionally, "apprehension causing" aggravated assault threatens the use of "*violent* force" because the proscribed conduct always has the potential to lead to "*violent* force."

*Id*. at 670-71.

The *Silva* court drew support for its conclusion from a line of cases, including *Licon-Nunez*, which have held that analogous offenses constitute crimes of violence under the element prong of § 2L1.2(b)(1)(A)(ii). *See id.* at 671-72 (discussing *Licon-Nunez*, *Dominguez*, and *United States v. Treto-Martinez*, 421 F.3d 1156 (10th Cir. 2005)). Indeed, the court noted that *Licon-Nunez* involved "the same subsection under which Silva was convicted." *Id*. at 672.

In addition, the *Silva* court held that § 30-3-2(A) satisfied the mens rea requirement. It rejected Silva's argument that because aggravated assault is a general intent crime and lacks as a requirement the defendant's specific intent to induce fear in the victim, it did not satisfy the ACCA's element prong. *Id.* at 673-74. Specifically, Silva argued that the Supreme Court's decision in *Leocal* and the Tenth Circuit's decision in *Zuniga-Soto* imposed the additional requirements that only crimes involving intentional conduct, not merely recklessness, can qualify as violent felonies under the element prong of the ACCA. *Id.* at 672. However, acknowledging that the ACCA only encompasses intentional conduct, the *Silva* court nonetheless held that the commission

---

**5** Although Silva's state-court plea agreement did not describe the assault and the record did not contain the plea colloquy, in focusing its analysis on this theory, the court noted that the New Mexico indictment tracked the statutory language of § 30-3-2(A), and Silva's sentencing challenge centered upon this theory. *Id*. at 669 n.3, 670.

of apprehension causing aggravated assault in New Mexico requires proof that the defendant acted "intentionally," not recklessly or negligently:

> [T]his argument . . . ignores Silva's plea of no contest to aggravated assault, which was an admission of intentional conduct. "Apprehension causing" aggravated assault requires proof of general criminal intent, which New Mexico courts have consistently "defined as conscious wrongdoing or the purposeful doing of an act that the law declares to be a crime." *State v. Campos*, [921 P.2d 1266, 1277 n.5 (N.M. 1996))]. . . . Silva concedes as much in his brief when he states that in a prosecution for "apprehension causing" aggravated assault, New Mexico's Uniform Jury Instruction for general criminal intent requires a jury to find beyond a reasonable doubt that "the defendant acted intentionally when he committed the crime." N.M. U.J.I. 14-141. That aggravated assault does not require proof of a specific intent to assault the victim, *State v. Manus*, [597 P.2d 280, 284 (N.M. 1979)], *overruled on other grounds by Sells v. State*, [653 P.2d 162, 164 (N.M. 1982)] [,] . . . or of a specific "intent [] to injure or even frighten" the victim, *State v. Morales*, [45 P.3d 406, 414 (2002)], only confirms that aggravated assault is not a specific intent crime, but rather is a general intent crime. The presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA. Because Silva admitted to engaging in conduct constituting the threatened use of physical force, and admitted to engaging in that conduct intentionally, his aggravated assault conviction qualifies as a violent felony.
>
> * * *
>
> [A]pprehension-causing aggravated assault requires proof of more than the display of dexterity in handling a weapon; the crime requires proof that a defendant purposefully threatened or engaged in menacing conduct *toward* a victim, with a weapon capable of producing death or great bodily harm. *See Bachicha*, 808 P.2d at 54. We conclude that this intentional conduct threatens the use of physical force against the person of another, and therefore qualifies as a violent felony under the ACCA.

Id. at 673-74 (citations and internal quotation marks omitted).[6]

---

[6] In so concluding, the court expressly declined to further expand *Leocal's* holding:

The dissent would conclude that Silva's aggravated assault conviction is not a violent felony, and would extend *Leocal* and *Zuniga-Soto* to conclude that crimes have as an element the "threatened use of physical force against the person of another" only if they proscribe "conduct performed with an intent to induce fear." [*Silva*, 608 F.3d at 676 (Hartz, J., dissenting)]. But *Leocal* cannot be read as definitively supporting that

Thus, under § 30-3-2(A), Silva could not have been convicted for merely reckless behavior. *See also Hammons*, 2010 WL 4321693 at *20-21 (citing *Silva* and holding that the defendant's prior conviction under a similar but not identical New Mexico statute – aggravated assault statute on a family member using a deadly weapon § 30-3-13(A)(2) – constituted a violent felony under the element prong of the ACCA). *Cf. United States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012) (holding that the defendant's prior Florida conviction for resisting an officer with violence was a crime of violence under § 2L1.2(b)(1)(A)(ii) because the use of more than de minimis physical force or violence was a necessary element of the offense and "Florida's general intent crimes plainly require something more than recklessness"); *United States v. King*, 673 F.3d 274, 279-80 (4th Cir. 2012) (holding that the defendant's South Carolina conviction for pointing and presenting a firearm required that the offender point, present, or show the firearm at another in a threatening manner and therefore qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(1)); *United States v. Luna*, 649 F.3d 91, 108-09 (1st Cir. 2011) (holding that the version of a Massachusetts armed robbery statute involving threatening words or gestures has as an element the threat of violent physical force necessary to satisfy the definition of "violent felony" under the ACCA); *United States v. Melchor-Meceno*, 620 F.3d 1180, 1184 (9th Cir. 2010) (holding that Colorado felony menacing statute "is categorically a crime of violence under the element prong of U.S.S.G. § 2L1.2. The nature of the force required . . . is in the category of violent active crimes, because it penalizes imminent serious bodily injury, rather than minimal, non-violent touching, and necessarily involves a threat to physical safety, rather than general safety. Furthermore, the predicate offense of menacing, a general intent crime, includes the requisite mens rea of intent for a crime of violence. It requires the defendant to knowingly place another person in fear of an imminent serious bodily harm."); *United*

---

extension. That case resolved an issue very different from the one we face here: whether state DUI offenses, "which either do not have a mens rea component or require only a showing of negligence in the operation of a vehicle," have as an element the use of physical force against the person of another, 543 U.S. at 6, 125 S. Ct. 377. In resolving that issue, the Court made clear that it "d[id] not deal . . . with an *attempted* or *threatened* use of force." *Id*. at 8-9, 125 S. Ct. 377 (emphasis in original).

*Silva*, 608 F.3d at 673-74.

*States v. Pulliam*, 566 F.3d 784, 788 (8th Cir. 2009) ("It goes without saying that displaying an operational weapon before another in an angry or threatening manner [in violation of Missouri's crime of unlawful use of a weapon] qualifies as threatened use of physical force against another person.").

The *Licon-Nunez* and *Silva* decisions provide very persuasive authority supporting the district court's application of the sixteen-level enhancement in the present case on the basis that a prior conviction under N.M. Stat. 30-3-2(A) is categorically a "crime of violence" under the element prong of §2L1.2. Although our court has not yet addressed whether such a general intent crime includes the requisite mens rea of intent to be deemed a crime of violence or violent felony, I am persuaded by the Fifth and Tenth Circuits' reasoning with regard to N.M. Stat. § 30-3-2(A). By its plain language – "assaulting or striking at another with a deadly weapon" – Subsection (A) unambiguously includes as an inherent element "the use, attempted use, or threatened use of physical force against another person" and precludes the possibility that the crime was committed with the insufficient mens rea of mere recklessness. Whether Rede-Mendez committed this offense under the attempted battery theory or the apprehension causing theory of aggravated assault recognized by the New Mexico courts, the result is the same – the requirement of general intent, combined with the affirmative use of a deadly weapon, renders the New Mexico crime of aggravated assault with a deadly weapon under § 30-3-2(A) sufficiently active and violent to qualify as a crime of violence.

The majority's contrary conclusion rests on the flawed assumption that Rede-Mendez's prior conviction may have been based on the use of "insulting language toward another impugning his honor, delicacy or reputation" under Subsection (C) of the simple assault statute, § 30-3-1(C), which would not satisfy the requirements of *Leocal* or *Johnson*. The majority acknowledges that "Rede-Mendez does not contend that his aggravated-assault conviction was based on the use of insulting language," but nonetheless holds that under the categorical approach, "[w]ithout any indication as to whether Rede-Mendez's aggravated-assault conviction . . . could have involved the

threatened use of physical force, we cannot conclude that Rede-Mendez committed a crime of violence."

However, as the majority further acknowledges, "we are bound by a state court's interpretation of state criminal law, including the elements of a crime[.]" (citing *United States v. Rodriguez*, 664 F.3d 1032, 1037 (6th Cir. 2011)).  As I have detailed above, the New Mexico courts recognize only two theories of aggravated assault – conforming to subsections (A) and (B) of § 30-3-1.  Thus, the majority's suggested possibility that Rede-Mendez pled guilty to aggravated assault under the "insulting language" theory of § 30-3-1(C) has no basis in New Mexico law.  By pleading guilty to aggravated assault with a deadly weapon under § 30-3-2(A), Rede-Mendez's conviction satisfied the element prong of § 2L1.2 cmt. n.1(B)(iii) so as to validate the district court's imposition of the sixteen-level sentencing enhancement.

III.

For these reasons, I would affirm and therefore respectfully dissent.